# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, JANE DOE 5, JANE DOE 6, JANE DOE 7, and JANE DOE 8 <br><br><br>*Plaintiffs*, <br> v. <br><br> UNITED STATES OF AMERICA <br> *Defendant.* | COMPLAINT <br><br> JURY TRIAL DEMANDED |

Plaintiffs Jane Doe 1, Jane Doe 2, Jane Doe 3, Jane Doe 4, Jane Doe 5, Jane Doe 6, Jane Doe 7, and Jane Doe 8 by and through their attorneys, The Bloom Firm, bring this action against Defendant United States of America. Plaintiffs allege upon knowledge concerning their own experience and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.     Jeffrey Epstein ("Epstein"), a now-disgraced sex trafficker and pedophile, was once a well-known and successful financier with ironclad connections to influential celebrities, politicians, and businesses.

2.     Before his arrest in 2019, Epstein was involved in a number of illegal and legally questionable activities dating back to the 1980s. In 1981, Epstein was ousted from Bear Stearns, an investment banking company, when they discovered Epstein was engaged in illegal activities.[1]

---

[1] *The Talented Mr. Epstein; https://archive.vanityfair.com/article/2003/3/the-talented-mr-epstein*

In the mid-1990s, Epstein's fellow New York financier and mentor, Steven Jude Hoffenberg, was imprisoned for running one of the largest Ponzi schemes in American history. [2] During this time, Epstein gained a reputation in New York for having a predilection toward young women[3] while his questionable financial activities allowed him to amass a massive fortune and a bevy of powerful, influential clients.

3.      In fact, Epstein used his powerful and influential connections to politicians, celebrities, and other high-ranking members of society to traffic hundreds of women and underage girls for nearly twenty-three years. Despite being made aware of his multiple crimes against women – including minor children – the Federal Bureau of Investigation ("FBI") ignored credible reports of Epstein's crimes dating back more than two decades before his 2019 arrest for charges including sex trafficking of minors. The FBI's negligence allowed Epstein to propagate his sex-trafficking enterprise into an empire.

4.      Plaintiffs therefore bring this action against the FBI for its negligent failure to investigate credible reports of Epstein's criminal activity, which enabled Epstein's sex-trafficking enterprise to operate for twenty-three years. Had the FBI acted with due diligence to investigate credible reports it received in 1996 and 2005 of Epstein's sexual misconduct involving minors, it could have prevented countless women and girls, including these eight victims, from enduring sexual abuse, sexual assault, rape, and/or sex trafficking.

5.      Epstein subjected Plaintiffs to various forms of sexual abuse. This abuse ranged from being forced to perform massages on Epstein while nude, to forced groping, masturbation, digital, oral and vaginal rape.

6.      Jane Does 1, 2, 6, 7, and 8 were lured to Epstein's mansion in New York under the

---

[2] *Id.*
[3] *Id.*

pretense of performing a massage for a wealthy client. When the women arrived at Epstein's New York mansion, they were subjected to various nonconsensual sexual acts including groping, touching of their intimate body parts, being forced to masturbate Epstein's penis, penetration with digits and/or foreign objects, and/or oral and vaginal rape.

7.      Jane Doe 5, a minor, was lured to Epstein's Florida mansion and was subjected to repeated digital, oral, and attempted vaginal rape over the course of several years.

8.      Jane Does 3 and 4 were employed by Epstein and his former girlfriend Ghislane Maxwell ("Maxwell"). Epstein and/or Maxwell subjected Jane Does 3 and 4 to repeated instances of sexual abuse ranging from groping to rape in locations including New York over the course of several years.

9.      The FBI has a long history of delays and inaction in the investigation of Jeffrey Epstein's vast sex trafficking ring. Credible reports of Epstein's illicit sex-trafficking and child sexual abuse were documented as early as 1996 by sisters Maria and Annie Farmer. Despite submitting a complaint to the FBI in 1996, it wasn't until nearly ten years later, in late 2006, that FBI agents commenced an investigation and interviewed Maria or Annie Farmer regarding the abuse they had suffered.[4]

10.      This inaction was in clear violation of the FBI's own investigative guidelines and procedures, as well as statues that were enacted by Congress to protect victims of child sexual abuse and trafficking. *See* FBI's Manual of Investigative Operations and Guidelines; 4 U.S.C. § 20341; 18 U.S. Code § 2251-2252.

11.      It is widely understood and documented that Epstein's abuse continued throughout

---

[4] *The Sisters who First tried to Take Down Jeffrey Epstein. https://www.nytimes.com/2019/08/26/us/epstein-farmer-sisters-maxwell.html and Two women tried to expose Jeffrey Epstein three decades ago. Why didn't the FBI stop him? https://www.independent.co.uk/news/world/americas/farmer-sisters-epstein-fbi-abuse-b2479602.html.*

the entire duration of the FBI's eventual investigation, which spanned 2006 to 2008.[5] The FBI's protracted investigation allowed Epstein unfettered access to interstate and international travel, all of his bank accounts, and a myriad of other resources which he employed in successfully continuing to carry out his human trafficking scheme.

12.    Moreover, the investigation that eventually commenced was not initiated by the FBI, but rather by the Palm Beach Police Department ("PBPD").  In 2005, a 14-year-old girl reported to the PBPD that Epstein had sexually assaulted her after luring her to his residence in Palm Beach, Florida. After receiving this report, the PBPD, through its investigation, uncovered the vast network of resources and recruiters that Epstein employed to recruit and entice victims.

13.    When the PBPD discovered the true nature of Epstein's illicit sex-trafficking scheme, it referred the case to the Palm Beach County State Attorney's office. Instead of charging Epstein appropriately with child sex crimes based on the severity of the evidence presented by the PBPD, the State Attorney chose to charge Epstein with solicitation of prostitution, a crime that carried a lesser penalty.

14.    Unsatisfied with the State Attorney's leniency, the PBPD subsequently referred the Epstein matter to the FBI on July 19, 2006, hoping that the FBI's vast resources and esteemed reputation for prioritizing sexual crimes against children would result in a robust investigation and prosecution.

15.    After the case was referred to the federal government, an Assistant United States Attorney ("AUSA") was assigned to investigate and develop a federal case against Epstein in conjunction with two FBI agents. This investigation concluded in May 2007, when the AUSA presented for the United States Attorney's Office for the Southern District of Florida ("USAO")'s

---

[5] *U.S. Virgin Islands v. JP Morgan Chase Bank NA, U.S. District Court, S.D.N.Y, No. 22-10904.*

consideration a draft 60-count indictment outlining specific charges against Epstein along with a detailed summary of the evidence.

16.    Two months after the AUSA presented the draft indictment and compilation of evidence, on July 31, 2007, the USAO inexplicably offered Epstein a Non-Prosecution agreement.

17.    This non-prosecution agreement allowed Epstein to plead guilty to lesser charges based in state law in order to avoid federal prosecution despite significant evidence that Epstein was involved in an illicit sex-trafficking scheme involving minors in violation of federal law.[6]

18.    This non-prosecution agreement was in stark contrast to the severity of the evidence and charges presented against Epstein – and ultimately allowed Epstein to evade federal prison. Despite clear guidelines under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771(a)(9) giving victims the right to be informed when a plea agreement or deferred prosecution decision is made, the USAO never consulted with any of the victims in deciding to offer Epstein the non-prosecution agreement.[7] The specificities of the FBI's failure to properly investigate and subsequently prosecute Epstein's crimes were not revealed to the victims until recently.

19.    On December 5, 2023, FBI director Christopher Wray testified before the Senate Judiciary Committee about the FBI's role in failing to investigate credible reports of Epstein's criminal activities. The Senate Judiciary Committee asked Mr. Wray questions about the FBI's knowledge of Epstein's child sexual abuse, specifically, what actions the FBI had taken to investigate credible reports of Epstein's possession and distribution of child sexual abuse material ("CSAM"). Mr. Wray could not answer the questions the Senate Judiciary Committee presented and answered vaguely, stating that he had not reviewed the Epstein file in a while and needed to

---

[6] *Non-Prosecution Agreement;* https://reason.com/wp-content/uploads/2021/08/Non-Prosecution-Agreement-1433.pdf
[7] *Id*. at Footnote 6.

check with his team before procuring a definitive answer.

20.    The FBI had a duty to investigate credible tips and reports concerning Epstein's illicit sex-trafficking scheme, his possession, production and distribution of CSAM, and his vast network of powerful connections that allowed him to rapidly expand his criminal empire. Instead, the FBI negligently failed to investigate these credible tips and reports and allowed Epstein unfettered access to hundreds of victims. Had Epstein been properly charged prior to Plaintiffs' abuse based on the credible evidence of child sex crimes presented against him at the time, Plaintiffs would not have fallen victim to his criminal empire.

## JURISDICTION, VENUE, AND TIMELINESS

21.    This action arises under the Federal Tort Claims Act. This Court is vested with jurisdiction pursuant to 28 U.S.C. § 1346(b)(1). Plaintiffs Jane Doe 1, Jane Doe 2, Jane Doe 3, Jane Doe 4, Jane Doe 5, Jane Doe 6, Jane Doe 7, and Jane Doe 8 proceed herein under the Federal Tort Claims Act.

22.    As stated in 28 U.S.C. § 2679(b)(1), the Federal Tort Claims Act is the exclusive remedy for injuries caused by all agents, servants and/or employees of federal agencies, which includes the FBI.

23.    All conditions precedent to Plaintiffs' filing this action have been satisfied. Specifically, each Plaintiff served proper notice on Defendant, and more than six months elapsed without acknowledgement from Defendant.

24.    The claims set forth herein were presented to the FBI by mailing a Standard Form 95 ("SF95") to the FBI on behalf of Plaintiffs as required by 28 C.F.R. § 14.2. More than six months have elapsed without a response from the FBI. There is an additional Plaintiff whose SF95 waiting period has not yet elapsed. Counsel for Plaintiffs anticipates amending this complaint to

include this additional Plaintiff after the SF95 waiting period elapses.

25.    Venue is proper in the United States District Court of the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because most plaintiffs were residents of and domiciled in the State of New York at the time of their abuse and were abused in the State of New York.

26.    This action has been timely filed under the Federal Tort Claims Act pursuant to 28 U.S.C.A. § 2401(b). The information regarding Defendant's culpability, which is predicate to Plaintiff's timely claims against Defendant, has only been partially revealed to the public. Such revelations occurred after years of Defendant's willful suppression and concealment. Plaintiffs only became aware of Defendant's negligence and its connection to their injuries once piecemeal information began to be made public in the 2023 class action lawsuit against J.P. Morgan Chase & Co., recent congressional hearings, and other lawsuits and media announcements.

27.    On May 2, 2023, Maria Farmer wrote a letter to the FBI and the DOJ detailing the report she made regarding Jeffrey Epstein in 1996 and the FBI's subsequent failure to follow up or investigate.[8] Ms. Farmer's letter, which was made public, resulted in Christopher Wray being questioned by the Senate Judiciary Committee about the FBI's investigations into Epstein.[9]

28.    Christopher's Wray's testimony on December 5, 2023 represented the first public revelation of the possibility that the FBI had failed to investigate credible reports of Epstein's crimes. Mr. Wray's testimony intimated to the victims the possibility that the FBI had been negligent in its investigation of Epstein's sexual misconduct involving women and minors before his arrest in 2019.

---

[8] *Maria Farmer's 2023 letter to FBI;* https://www.jamesmarshlaw.com/wp-content/uploads/2023/05/Letter-re-Jeffrey-Epstein-Calling-for-Investigation-of-FBI-including-Exhibits.pdf
[9] *Unofficial transcript of FBI Director Christopher Wray's testimony before the Senate Judiciary Committee on December 5, 2023,* at timestamp 3:00:07; https://www.rev.com/transcripts/fbi-director-christopher-wray-testifies-before-senate-judiciary-committee-12-05-23-transcript

29.     Since Mr. Wray's testimony, there has been an increased public demand for information from the government regarding its knowledge about and investigations into Epstein's misconduct. Despite mounting public pressure, the government has refused to release such information.[10] Additionally, the FBI has failed to produce any information indicating that a reasonably diligent investigation was conducted. This ongoing failure to provide any substantive documents or statements pointing to a legitimate investigation can reasonably be interpreted by Plaintiffs as confirmation of the FBI's negligence and an indication of a larger cover-up by the United States of America to protect incriminating information related to Epstein and his co-conspirators.

30.     Since December 2023, the government has released piecemeal documents relating to Epstein but has continued to withhold substantive information from the public that would clarify the full extent of the FBI's negligence in their investigation. A significant share of the publicly available information regarding the FBI's negligence and the United States government's ongoing cover-up has come from Epstein's survivors themselves.[11] For example, in a complaint filed by Ms. Farmer this year, she alleged that she filed a Freedom of Information Act ("FOIA") request with the FBI sometime after her May 2023 letter.[12] In response to her request, on January 2, 2025, the FBI informed Ms. Farmer that her FOIA request would take approximately two years to complete.[13]

31.     Additionally, though the Inspector General confirmed receipt of Ms. Farmer's May 2023 letter, no investigation was conducted.[14] Eighteen months later, on December 2, 2024, Ms.

---

[10] *Most Americans want the Epstein files released, poll finds;* https://www.pbs.org/newshour/politics/most-americans-want-the-epstein-files-released-poll-finds
[11] *Farmer v. United States of America; filed May 29, 2025, in the United States District Court District of Columbia; Case No. 1:25-CV-01709*
[12] *Id.*
[13] *Id.*
[14] *Id.*

Farmer received another letter from the Department of Justice informing her that the Internal Affairs Section consider[ed] her complaint addressed.[15] This information, revealed in Ms. Farmer's complaint rather than by the FBI, constitutes the only new information released to the public relating to the FBI's failure to investigate Epstein.

32.     In addition to its failure to release substantive information related to the FBI's investigation or lack thereof, the United States Government has actively taken steps to protect information related to Epstein at every opportunity.[16] Every day that the government continues to withhold substantive information serves as additional confirmation of the FBI's negligent failure to investigate Epstein's sexual misconduct involving women and minors, and reasonably leads Plaintiffs to conclude that the government is actively involved in covering up the FBI's negligence.

## PARTIES

33.     Jane Doe 1 is a U.S. citizen and was, at all relevant times, a resident of and domiciled in the State of New York. Jane Doe 1 was sexually abused in the State of New York in or around 2004.

34.     Jane Doe 2 is a U.S. citizen and was, at all relevant times, a resident of and domiciled in the State of New York. Jane Doe 2 was sexually abused in the State of New York in or around 2005.

35.     Jane Doe 3 is a U.S. citizen and was, at all relevant times, a resident of and domiciled in the State of New York. Jane Doe 3 was sexually abused in the State of New York and sex trafficked to the United States Virgin Islands on numerous dates between 2003 and 2007.

36.     Jane Doe 4 is a U.S. citizen and was, at all relevant times, a resident of and

---

[15] *Id.*
[16] *Fighting it for months, Trump signs bill to release Jeffrey Epstein case files*;
https://www.pbs.org/newshour/politics/fighting-it-for-months-trump-signs-bill-to-release-jeffrey-epstein-case-files

domiciled in the State of Florida until 2010, at which point Jane Doe 4 was domiciled in the State of New York. Jane Doe 4 was sexually abused as a minor in the State of Florida and the State of New York on numerous dates between 2009 and 2011.

37.    Jane Doe 5 is a U.S. citizen and was, at all relevant times, a resident of and domiciled in the State of Florida. Jane Doe 5 was sexually abused as a minor in the State of Florida on numerous dates between 2002 and 2005.

38.    Jane Doe 6 is a U.S. citizen and was, at all relevant times, a resident of and domiciled in the State of New York. Jane Doe 6 was sexually abused in the State of New York and on numerous dates between 2005 and 2006.

39.    Jane Doe 7 is a U.S. citizen and was, at all relevant times, a resident of and domiciled in the State of New York. Jane Doe 7 was sexually abused in the State of New York in or around 2004.

40.    Jane Doe 8 is a U.S. citizen and was, at all relevant times, a resident of and domiciled in the State of New York. Jane Doe 8 was sexually abused in the State of New York in or around 2005.

41.    All Plaintiffs are using pseudonyms to protect their identities because of the highly sensitive and personal nature of this matter. Additionally, some of the Plaintiffs were minors at the time of the assaults.

42.    Plaintiffs are at serious risk of retaliatory harm because the co-conspirators had, and continue to possess, tremendous wealth and power. They have a demonstrated ability to cause serious harm.

43.    Plaintiffs' safety, right to privacy, and security outweigh the public interest in their identification and any prejudice to the Defendant by allowing them to proceed anonymously.

44.     Plaintiffs in other lawsuits involving Epstein were afforded similar protections and anonymity was ordered as it pertains to child sex trafficking. *See Jane Doe v. Government of the United States Virgin Islands*, 23-cv-10301 [SDNY]; *Jane Doe v. JP Morgan Chase Bank, N.A.* 22-cv-10019 [SDNY].

45.     The United States of America is a defendant in this action pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1366(b)(1) and §§ 2671-80, which provide for jurisdiction and liability for certain torts committed by federal employees acting within the scope of their employment. The liability of the United States of America arises from the acts and/or omissions of employees and agents of the FBI, an agency of the Defendant.

46.     The FBI is a federal law enforcement agency empowered by the United States Congress to enforce and investigate certain alleged violations of the United States Criminal Code. The FBI is part of the Department of Justice and formally subject to oversight and direction by the Attorney General, an employee of the United States of America.

47.     Agents, servants, and employees of the FBI are agents, servants, and employees of the Defendant United States of America.

48.     At all times mentioned, the FBI was funded, controlled, managed, operated, and/or owned by Defendant United States of America and was acting within its mandate and authority.

49.     It was the duty of Defendant United States of America and/or the FBI and/or Department of Justice to investigate reports of sex crimes and child sex trafficking claims; enforce law prohibiting sex crimes, human trafficking, and child sex trafficking; prevent these crimes from repeatedly occurring; and protect Plaintiffs and numerous other victims from being repeatedly sexually abused and sex trafficked.

///

**FACTS**

**I. *Even Before his 2006 Arrest, Epstein's Political Connections Placed Him Within the Purview of FBI Scrutiny and Awareness***

50.    In the 1980s, Epstein successfully founded and operated his own financial firm, catapulting him into the social stratosphere of the likes of other wealthy, influential individuals such as Donald Trump.[17] Epstein also became well-acquainted with Bill Clinton, who was the United States President between 1993 and 2001.[18] Records from Epstein's flight logs show that Clinton took at least 17 flights using Epstein's private jet during the 2000s.[19] Former presidents are protected by the Secret Service, which works closely with the FBI in matters involving any threats or violations of law concerning a person protected by the Secret Service, such as an active or former U.S. President. Thus, the FBI would have been aware of Epstein and his connection to Clinton. *Department of Justice Criminal Resource Manual §1527.*[20]

51.    In addition to the close relationship Epstein maintained with former president Clinton, Epstein also maintained a close relationship with Jean-Luc Brunel, with whom he became acquainted sometime in the 1990's through Maxwell.[21] After Jean-Luc Brunel was ousted from his modeling agency in 1999, he and Epstein formed their own modeling agency known as MC2 Model Management. This agency financed American visas for foreign models to lure them to New York City under the pretense of obtaining modeling work, only to sex traffic them.[22]

---

[17] *The Epstein Files: A Timeline;* https://www.britannica.com/topic/The-Epstein-Files-A-Timeline
[18] *Id.*
[19] *Id.*
[20] *See also* https://www.justice.gov/archives/jm/criminal-resource-manual-1527-agreement-between-fbi-and-secret-service; https://www.justice.gov/jm/jm-9-65000-protection-government-officials#9-65.100; https://usun.usmission.gov/security-and-protective-services/
[21] *Who was Jean-Luc Brunel? Jeffrey Epstein's disgraced fashion mogul friend named in new filings;* https://www.independent.co.uk/news/world/americas/jean-luc-brunel-jeffrey-epstein-who-is-b2475345.html#:~:text=More%20allegations%20emerge%20in%20newly,California%2C%E2%80%9D%20the%20filing%20added.
[22] *Id.*

## II. *The FBI Was Aware of Epstein's Sexual Abuse of Women as Early As 1996 When Maria Farmer Contacted the FBI And Reported Epstein's Sex Crimes.*

52.     The FBI first became aware of Epstein's sexual abuse of women and underage girls in 1996 when two sisters, Maria and Annie Farmer, contacted the FBI to report that Epstein had sexually abused them.

53.     In the mid 1990s, Epstein hired Maria Farmer as an "art scout" after purchasing one of her paintings. During the course of her employment Ms. Farmer was sexually assaulted by both Epstein and Ghislane Maxwell, Epstein's then girlfriend and co-conspirator.[23] In addition to the sexual assault, during her employment with Epstein, Ms. Farmer observed illicit and suspicious activities of sex trafficking involving minors.

54.     On August 29, 1996, Ms. Farmer contacted the New York Police Department ("NYPD") to report Epstein's crimes. She disclosed that Epstein and Maxwell sexually assaulted her and also shared information about potential sexual abuse perpetrated by Epstein and Maxwell which was potentially part of a larger sex-trafficking scheme, detailed their possession and distribution of child sexual abuse material ("CSAM"), and shared that she suspected Epstein and Maxwell had also sexually assaulted her minor siblings – specifically disclosing to the NYPD that two nude images of her minor siblings were now missing from her possession after being at Epstein's residence.

55.     The NYPD directed Ms. Farmer to report these crimes to the FBI. Ms. Farmer subsequently contacted two different FBI offices by telephone.

56.     As Ms. Farmer recounted to the FBI the same report she shared with the NYPD

---

[23] In 2022, Ghislaine Maxwell was sentenced to 20 years in prison for her role in Jeffrey Epstein's sex trafficking empire after she was found guilty of assisting and participating in Epstein's abuse of minor girls from at least 1994; *https://www.justice.gov/usao-sdny/pr/ghislaine-maxwell-sentenced-20-years-prison-conspiring-jeffrey-epstein-sexually-abuse*

over the phone, the FBI without warning or explanation hung up on her. Despite being the most elite and prestigious law enforcement agency in the United States and perhaps the world, and the significant investigatory resources at its disposal, the FBI never called back or followed up with Ms. Farmer in any manner.

### III.    *The FBI Failed to Investigate Ms. Farmer's Report Regarding Epstein in A Clear Violation of Its Own Investigative Standards and Procedures.*

57.    As is set forth in the FBI's Manual of Investigative Operations and Guidelines ("MIOG"), the FBI is charged with the duty of investigating violations of the laws of the United States. MIOG Part I §1-2 (1).[24] The MIOG also establishes that the FBI … plays a central role in national law enforcement and in the proper administration of justice in the United States." MIOG Part I §92.

58.    "Investigations by the FBI are premised upon the important duty of government to protect the public against general crimes […] and that duty must be performed with care to protect individual rights. The investigative guidelines should give the public a firm assurance that the FBI is acting properly under the law." *Id.*

59.    The MIOG outlines the FBI's duties in conducting "Preliminary inquiries" when responding to certain allegations:

> "On some occasions the FBI may receive information or an allegation not
> warranting a full investigation because there is not yet a 'reasonable
> indication' of criminal activities but whose responsible handling requires
> some further scrutiny beyond the prompt and extremely limited checking
> out of initial leads. In such circumstances, though the factual predicate for

---

[24] *Manual of Investigative Operations and Guidelines;*
*https://vault.fbi.gov/miog/Manual%20of%20Investigative%20Operations%20and%20Guidelines%20%28MIOG%29%20Part%2001%20-%2001/view*

an investigation has not been met, the FBI may initiate an 'inquiry' involving

some measured review, contact, or observation activities in response to the

allegation or information indicating the possibility of criminal activity."

60.    The MIOG also specifies that all preliminary inquiries should be completed within 90 days of the first investigative step. MIOG Part I, §2 (B)(1). Preliminary inquiries include interviewing the complainant, interviewing the potential subject, physical or photographic surveillance of any person, and examination of available federal, state, and local government records. *Id.* at (5) (a-g).

61.    "A general crimes investigation may be initiated by the FBI when facts or circumstances reasonably indicate that a federal crime has been, is being, or will be committed" MIOG Part I, §2 (C)(1).

62.    Beginning in 1990, Congress enacted multiple laws to address the growing issues specifically surrounding crimes against children, including sexual abuse and sex trafficking of children.

63.    At the time Ms. Farmer made her report to the FBI, the FBI was required to report any suspected claim of child sexual abuse to law enforcement. Specifically, under 4 U.S.C. § 20341(a)(1), a person who, while engaged in a professional capacity or activity […] on Federal land or in a federally operated (or contracted) facility, learns of facts that give reason to suspect that a child has suffered an incident of child abuse, shall as soon as possible make a report of the suspected abuse" to the appropriate law enforcement agency.

64.    4 U.S.C. §20341(a)(2) expands on this mandatory reporting requirement to include, "a covered individual who learns of facts that give reason to suspect that a child has suffered an incident of child abuse, including sexual abuse, shall as soon as possible make a report of the

suspected abuse to the agency designated by the Attorney General under subsection (d)."

65.    According to a May 29, 2012 DOJ Office of Legal Counsel opinion, this statute also mandates that federal law enforcement officers report suspected child abuse even if the abuse did not occur on federal land or in a federal facility. [25]

66.    The MIOG also outlined the established standard for investigating sexual crimes against children. These standards were made effective on December 10, 1991, five years before Ms. Farmer made her complaint to the FBI. In contrast to preliminary inquiries and general crimes investigations, which the agency "may" elect to conduct, cases involving suspected child abuse are held to a higher standard. Specifically, the MIOG states that "prosecutive priority should be given to matters involving violations of Title 18, USC § 2251-2257. MIOG Part I §145–4.8(1).[26] Additionally, the MIOG establishes the FBI as the primary investigative body for crimes related to Title 18, USC § 2251. MIOG Part I §145–3(3).

67.    Title 18, USC § 2251 makes it a crime for any person to coerce, entice or persuade a minor to engage in any sexually explicit conduct for the purposes of producing any visual depiction of that conduct. 18 U.S. Code § 2251(a). Title 18, USC § 2252 makes it a crime to knowingly distribute or receive child pornography. Ms. Farmer's complaint to the NYPD and subsequent complaint to the FBI clearly established probable cause for the FBI to believe that a crime in violation of Title 18, USC § 2251 or 2252 had occurred which would have made additional investigation into Epstein a matter of priority. MIOG Part I §145–4.8(2) and (5).

68.    The  MIOG outlines that "If there are any indications that child abuse is present,

---

[25] *Memorandum Opinion For The General Counsel United States Department Of Veterans Affairs* *https://www.justice.gov/sites/default/files/olc/opinions/2012/05/31/aag-reporting-abuse.pdf*
[26] *Manual of Investigative Operations and Guidelines* *https://vault.fbi.gov/miog/Manual%20of%20Investigative%20Operations%20and%20Guidelines%20%28MIOG%29%20Part%2001%20-%2007/view*

the FBI should ensure that the matter is called to the attention of local investigators and prosecutors" and "special priority should be given to cases involving the use of minors engaging in sexually explicit conduct for the purpose of producing any visual depiction of such conduct." MIOG Part I §145–4.8(2) and (5).

69.     The MIOG also mandates that the abuser be interviewed during the course of the investigation, "During the course of the investigation of most obscene matter cases, it becomes necessary to interview the subject and obtain obscene evidence from him/her." MIOG Part I §145–2 (9).

70.     Despite Ms. Farmer's documented report, which provided the FBI with knowledge that Epstein was in possession of child sexual abuse material ("CSAM"), the FBI nevertheless declined to restrict or attempt to restrict Epstein's liberties in any way, shape or form. Additionally, the FBI never reached out to Ms. Farmer to interview her in response to her credible reports that Epstein was in violation of Title 18, USC § 2251 and 2252.

**IV.     *Despite Credible Evidence That Epstein Was Engaged in Federal Child Sex-Trafficking Crimes, He Was Offered a Non-Prosecution Agreement In 2007 Which Shielded Him and His Co-Conspirators from Federal Prosecution in Violation of the Crime Victims' Rights Act***

71.     On July 19, 2006, the PBPD in Florida referred a case against Epstein to the FBI. This case contained serious allegations and evidence of Epstein's `involvement in child sex crimes, as well as clear documentation of his possession of CSAM.

72.     The FBI tasked the USAO with investigating these claims. The USAO subsequently assigned the case to an Assistant U.S. Attorney ("AUSA"). For the next year, the AUSA, along with the help of two FBI agents, investigated claims that Epstein solicited minors to provide massages for him, and subsequently sexually assaulted them.

73.     At the conclusion of the investigation, the AUSA presented a draft of a 60-count

indictment that outlined specific charges against Epstein as well as a summary of the investigation that presented significant evidence against Epstein along with the information that additional victims had been uncovered. [27]

74.    Despite the 60-count draft indictment presented by the AUSA, the USAO declined to prosecute Epstein for any of the federal sex-trafficking charges and instead presented Epstein with a non-prosecution agreement. This non-prosecution agreement allowed Epstein to evade federal prison despite clear and overwhelming evidence that Epstein was engaged in the violation of federal sex-trafficking laws.

75.    At the time Epstein was offered the non-prosecution agreement, neither USAO or the FBI contacted or consulted with victims about their decision to offer Epstein the non-prosecution agreement – a decision that would later be deemed a violation of the Crime Victim's Right's Act.[28]

76.    The Non-Prosecution Agreement ("NPA") outlined a lenient plea deal where Epstein pled guilty to one count of solicitation of prostitution in violation of Florida law and was sentenced to 18 months in county jail and 12 months of community control.[29] This lenient sentence was in stark contrast to the penalties imposed by the charges outlined in the AUSA's indictment, as just *one* of the charges outlined against Epstein in the AUSA's indictment carries a minimum sentence of 15 years. 18 U.S. Code § 1591(b)(1).

77.    After he signed the non-prosecution agreement, Epstein never saw the inside of a jail cell. Instead, he was kept in a private wing of the Palm Beach County Stockade, in an unlocked

---

[27] *Department of Justice Office of Professional Responsibility Executive Summary of Report; https://www.justice.gov/archives/opa/press-release/file/1336416/dl?inline=*
[28] *Department of Justice Office of Professional Responsibility Executive Summary of Report; https://www.justice.gov/archives/opa/press-release/file/1336416/dl?inline=*
[29] *Non-Prosecution Agreement; https://reason.com/wp-content/uploads/2021/08/Non-Prosecution-Agreement-1433.pdf*

cell, and was allowed to leave the stockade for twelve hours each day, six days a week.[30]  Epstein conducted business as usual, and used his wealth and power to influence the leniency of his supposed "incarceration." The guards left the stockade's doors unlocked at Epstein's direction, and greeted him each time he entered and left. While "incarcerated," Epstein continued to work on "non-profit" projects that allowed him to successfully maintain a steady income which would later be used to traffic more women.[31]

78.    As a result of the non-prosecution agreement, Epstein was allowed to retain access to his money and connections, which he leveraged when trafficking women by paying women after assaulting them, or, paying women to travel to or from one of his various estates.[32]

79.    This failure by the FBI to prosecute or substantially investigate the claims against Epstein allowed him to continue his abuse of women and children until his arrest, prosecution, and eventual suicide in 2019.

80.    Unbeknownst to the public, the FBI continued to receive credible tips and reports of Epstein's illicit sex trafficking scheme even after 2006. This information was recently revealed to the public through a case which appeared before this court *U.S. Virgin Islands v. JP Morgan*

---

[30] *For 'client' Jeffrey Epstein, an unlocked cell in a Florida Jail,* https://www.washingtonpost.com/investigations/captain-at-jail-where-epstein-served-time-in-2008-ordered-that-his-cell-door-be-left-unlocked/2019/07/19/93e38934-a972-11e9-86dd-d7f0e60391e9_story.html; DOJ Report *supra* note 3.

[31] *Id.*, see also *Jail records show sex offender Jeffrey Epstein got special treatment;* https://www.palmbeachpost.com/story/news/crime/2019/07/19/jeffrey-epstein-jail-records-show-sex-offender-got-special-treatment/4643117007/. This pattern of special treatment towards Epstein even extended to Maxwell, who was convicted of child sex trafficking in 2022. Maxwell, who is currently serving a 20-year prison sentence, enjoys customized meals, access to computers, after-hours access to the prison recreation yard, and her own puppy – all luxuries which are not afforded to any prisoner housed alongside her. *Ghislaine Maxwell Sentenced to 20 Years in Prison for Conspiring with Jeffrey Epstein to Sexually Abuse Minors;* https://www.justice.gov/usao-sdny/pr/ghislaine-maxwell-sentenced-20-years-prison-conspiring-jeffrey-epstein-sexually-abuse; *Ghislaine Maxwell gets special treatment in prison, Rep. Jamie Raskin says a whistleblower told him;* https://www.cnn.com/2025/11/10/politics/ghislaine-maxwell-special-treatment-commutation-raskin-whistleblower

[32] *New records detail how Epstein leveraged connections to the wealthy, powerful to abuse girls;* https://www.pbs.org/newshour/nation/new-records-detail-how-epstein-levereged-connections-to-the-wealthy-powerful-to-abuse-girls

*Chase Bank NA*, U.S. District Court, S.D.N.Y, No. 22-10904, where JP Morgan Chase revealed that they had contacted the federal government on multiple occasions between 2006 and 2008 in order to report Epstein's suspicious transactions that appeared to fund sex-trafficking, specifically, Epstein's numerous payments to women totaling more than $1.1 million dollars. The FBI neglected to investigate these reports.

**V.    *Had The FBI Investigated Maria Farmer's Credible Report In 1996, It Would Have Uncovered Irrefutable Evidence of a Child Trafficking Scheme and Child Sexual Abuse Material***

81.    If the FBI had investigated Epstein's home after Ms. Farmer's complaint, it would have uncovered a trove of evidence to support her claims that Epstein was involved in a child sex trafficking scheme, as well as his possession of CSAM.

82.    After Epstein's 2019 arrest, authorities in New York executed a search warrant of his New York residence. As part of their search, they uncovered CSAM in a locked safe, as well as a large quantity of nude photos of women, some of whom were clearly minors.[33]

83.    The search also revealed compact discs with labels that categorized the photos in the following format: "'Young [Name] + [Name],' 'Misc nudes 1,' and 'Girl pics nude'". [34]

84.    In addition to the nude photos of women, authorities also uncovered additional evidence such as Epstein's massage tables and numerous hard drives, passenger and visitor logs, computer, cellphones, cameras, video cameras, miscellaneous financial documents, and records of cash disbursements.[35] The specific contents of the computers, hard drives, cameras, visitor logs, and cash disbursements have not been made available to the public.[36]

---

[33] *Feds found 'vast trove' of nude photos in Jeffrey Epstein's safe;* https://nypost.com/2019/07/08/feds-found-vast-trove-of-nude-photos-in-jeffrey-epsteins-safe/, *also, What we know about the Epstein Files,* https://www.cnn.com/2025/07/25/politics/epstein-files-justice-department
[34] *Id.*
[35] *Id at 26. See also,* https://www.justice.gov/ag/media/1391271/dl?inline
[36] *Id.*

VI.    ***The FBI's Failure to Investigate Credible Reports of Epstein's Sex-Trafficking Scheme Resulted in the Victimization of Hundreds of Women.***

85.    If the FBI had exercised due diligence in its investigation of the multiple, credible reports of Epstein's illegal behavior, and taken appropriate actions based on its findings, it could have prevented Epstein from continuing to sexually assault countless victims including Plaintiffs.

86.    Specifically, a reasonably thorough investigation into the credible reports of sexual abuse from Maria and Annie Farmer in 1996 would have revealed that Epstein was a serial predator who, with his vast financial resources, was operating an empire of sexual abuse that victimized hundreds of women, many of whom like the Farmer sisters, were underage. A reasonably diligent investigation into the 1996 report would have also revealed evidence that Epstein possessed, created, and distributed CSAM –in clear violation of federal law, and squarely within the investigative jurisdiction and priority of the FBI.

87.    Such an investigation would have revealed evidence of ongoing criminal activity that would have provided a basis for an arrest and/or prosecution. Accordingly, the FBI could have taken steps to limit Epstein's freedom as well as his access to the vast financial resources which are now known to have been instrumental in his ability to sustain and perpetuate his human trafficking empire. Moreover, a public investigation in the mid-to-late 1990s would have disgraced Epstein long before his highly publicized arrest in 2019, breaking up his close network of influential public figures, his connections to which further emboldened him to continue his tyrannous rampage of abuse against women and underage girls.

88.    However, despite the Farmer sisters' credible report of sexual abuse involving a minor, the FBI waited *ten years* to launch an investigation into their claims, as it was not until 2006 that the FBI contacted and interviewed them. By this time, hundreds of other women, including Plaintiffs had already fallen victim to Epstein's longstanding modus operandi of sexually

assaulting vulnerable young women under the pretense of performing massages or other services for him. Due to the unjustifiable delay of *ten years* before conducting a reasonable investigation into serious, credible reports of sexual misconduct involving minors, the FBI allowed Jeffrey Epstein to freely continue his prolific human trafficking and sexual abuse scheme in locations including New York, Florida and the U.S. Virgin Islands, proximately causing Plaintiffs' sexual assaults and resulting harm.

## CAUSE OF ACTION

## COUNT 1: NEGLIGENCE

89.    Plaintiffs incorporate by reference all allegations contained in all preceding paragraphs.

90.    The FBI owed a legal duty to the victims who were sex trafficked, sexually assaulted, and sexually abused by Epstein. The FBI failed to follow its own procedures and protocols to stop and prevent sexual abuse, assault, and trafficking.

91.    The FBI had a non-discretionary obligation governed by established protocols to handle and investigate complaints concerning potential and ongoing sexual abuse and assault, child sexual abuse and assault, and child and human sex trafficking in a reasonable manner. That obligation included taking action against Epstein to prevent him from committing repeated crimes. The FBI failed to take appropriate action in light of credible complaints made regarding Epstein.

92.    The FBI failed to exercise reasonable care in (a) complying with mandatory investigative procedures that the agency had adopted as the standard of conduct for pursuing reports; (b) complying with non-discretionary duties to follow up with people possessing credible information and evidence about ongoing sex trafficking; (c) investigating reports and other information regarding Epstein's abuse of women and minors; and (d) handling information and

evidence regarding Epstein's abuse of women and minors.

93.     The FBI failed to exercise reasonable care in the following ways, among other negligent acts and omissions already known and to be revealed in discovery:

    a.  Failing to properly respond to a report received from Maria Farmer in 1996 of sexual misconduct involving minors;

    b.  Failing to properly respond to complaints and reports regarding sex trafficking and sexual abuse of minors from 1996 to 2005;

    c.  Negligently investigating reports of a 14-year-old girl being sexually abused on Epstein's Palm Beach property;

    d.  Ignoring reports of child sex trafficking;

94.     Having been alerted by the victims and other law enforcement agencies, receiving reports, and gaining information from banking corporations, the FBI made fundamental errors that enabled Epstein to continue abusing women and girls. The FBI's delays and failures to pursue investigations into Epstein despite credible information permitted his sexual abuse and sex trafficking to continue, leading to the abuse of Plaintiffs and other victims.

95.     As a direct and proximate cause of the FBI's negligence, Plaintiffs would not have been and/or would not have continued to be sex trafficked, abused, and assaulted. The FBI's failure to investigate reports and information it received, and to follow its own non-discretionary, mandatory, and established protocols was a direct and substantial cause of Plaintiffs' damages.

96.     If the FBI had complied with its mandatory obligations to investigate and intervene based on the information it was receiving, Epstein would not have been able to continue to commit the crimes he did against Plaintiffs and other victims. The FBI's repeated and continued failures and inaction allowed Epstein and others to continue to sexually abuse, rape, assault, and sex traffic

for almost 25 years.

97.    As a direct and proximate cause of Defendant's negligence, Plaintiffs were sexually abused, raped, assaulted, violated, harassed, intimidated, and suffered permanent injuries, including but not limited to severe emotional and physical pain and suffering, Post-Traumatic Stress Disorder, insomnia, anxiety, shock, fear, nightmares, shame, embarrassment, loss of earnings, flashbacks, need for future medical and psychiatric expenses, and other significant injuries.

## REQUEST FOR RELIEF

98.    Plaintiffs respectfully request that the Court enter judgment in their favor, and against the United States, as follows:

a.    That the Court award Plaintiffs compensatory, consequential, general, and nominal damages, as well as all other available damages, against Defendant in an amount to be determined at trial;

b.    That the Court award Plaintiffs the costs and disbursements of the action, along with reasonable attorney's fees, costs, and expenses;

c.    That the Court award pre- and post-judgment interest at the maximum legal rate; and

d.    That the Court grant all such other and further relief as it deems just and proper.

WHEREFORE, Plaintiffs pray the Court for judgment against Defendant for an amount far exceeding the jurisdictional requirement for compensatory damages, together with costs of this suit, legal interest, reasonable attorney's fees, and such other relief as the Court may deem just and proper under the circumstances.

///

## **<u>JURY DEMAND</u>**

Plaintiffs demand a trial by jury of all issues triable.

By: _____

Lisa Bloom, Esq.

Arick Fudali, Esq.

Yasmine Meyer, Esq.

Mary Fitilchyan, Esq. (To be admitted *Pro Hac Vice)*

Megan Helfend, Esq.

*Attorneys for Plaintiffs*